**Affirmed as Modified and Opinion filed July 27, 2017.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00189-CV

**TECLOGISTICS, INC. AND JOSEPHINE TREURNIET, Appellants/Cross-Appellees**

**V.**

**DRESSER-RAND GROUP, INC., Appellee/Cross-Appellant**

On Appeal from the 270th District Court
Harris County, Texas
Trial Court Cause No. 2012-62247

### O P I N I O N

In this appeal from a jury trial on claims of breach of contract and common-law fraud, both sides appeal the judgment. TecLogistics, Inc. contends that no evidence supports the breach-of-contract and fraud damages assessed against it. Successful claimant Dresser-Rand Group, Inc. argues that the trial court abused its discretion in failing to submit to the jury a question on TecLogistics' president Josephine Treurniet's individual liability for fraud.

We agree with TecLogistics that the evidence is legally insufficient to support the jury's finding of breach-of-contract damages. The evidence is sufficient, however, to support the fraud damages assessed against it. Regarding Dresser-Rand's cross-appeal, we hold that the trial court did not abuse its discretion in refusing Dresser-Rand's proposed charge questions regarding Treurniet's individual liability for fraud.

We accordingly modify the judgment to eliminate the award of damages for breach of contract, and as modified, we affirm the trial court's judgment.

## I. BACKGROUND

Dresser-Rand Group, Inc.[1] manufactures and services compressors and turbines for the oil and gas industry worldwide. For a number of years, Dresser-Rand used freight forwarder TecLogistics, Inc. to arrange for the transportation of parts and supplies between Dresser-Rand and its customers. In October 2010, Dresser-Rand sent a letter to its employees requiring them to use one of two other companies for any international shipments paid for by Dresser-Rand. In that letter and in another letter sent directly to TecLogistics, Dresser-Rand stated that TecLogistics was an "unapproved" freight forwarder, and that unapproved freight forwarders would be paid only for services authorized in advance by specific Dresser-Rand employees.

TecLogistics and its owner and president Josephine Treurniet sued Dresser-Rand, and Dresser-Rand counterclaimed, but by the time of trial, only Dresser-Rand's counterclaims for breach of contract and common-law fraud remained.

---

[1] Although Dresser-Rand stated in its pleadings that this name is incorrect and that its correct name is Dresser-Rand Company, the company is referred to as Dresser-Rand Group, Inc. in the judgment and in the parties' appellate briefs. We follow the same convention.

Viewed in the light most favorable to the verdict, the trial evidence showed that TecLogistics commonly subcontracted its work to Pentagon Freight Services, Inc. and included Pentagon's charges on its own invoices to Dresser-Rand. Dresser-Rand required TecLogistics to "back up" the charges by submitting Pentagon's invoices along with its own. Dresser-Rand paid the passed-through charges, which were supported by invoices bearing Pentagon's name, address, and invoice number.

During the litigation, however, Dresser-Rand obtained the invoices directly from Pentagon and found they did not match the "Pentagon" invoices presented by TecLogistics. Through four invoices, TecLogistics charged Dresser-Rand a total of $8,181.73 for Pentagon's services, and the figure matched the "Pentagon" invoices TecLogistics provided. Pentagon's real invoices showed that it had charged TecLogistics a total of only $2,300.77 for those services. Treurniet admitted at trial that she had decided upon the amount to charge Dresser-Rand for Pentagon's services and that she had created the false Pentagon invoices to back up those amounts. In addition to these overcharges, Dresser-Rand produced evidence that it twice paid the same TecLogistics invoice for $7,306.24.

At the close of evidence, Dresser-Rand moved for directed verdict against TecLogistics, but the trial court granted the motion only as to TecLogistics' liability for breach of contract, leaving damages for the jury to assess. The trial court additionally submitted to the jury Dresser-Rand's fraud claim against TecLogistics, but refused Dresser-Rand's proposed jury question that would have included Treurniet in the same fraud-liability question with TecLogistics.

The jury found $7,306.00 would fairly and reasonably compensate Dresser-Rand for TecLogistics' breach of contract. The jury also found TecLogistics liable

for fraud and assessed damages of $5,881.00 for that claim.[2]  In accordance with the verdict and its charge rulings, the trial court rendered judgment against TecLogistics for $13,187.00 and ordered that Dresser-Rand take nothing on its claims against Treurniet.  After the trial court denied TecLogistics' motion for judgment notwithstanding the verdict, both sides appealed.

## II.  ISSUES PRESENTED

In two issues, TecLogistics argues that Dresser-Rand's voluntary overpayment of $7,306.00 is not recoverable as breach-of-contract damages and cannot be recovered as unjust enrichment, which was not pleaded.  In two additional issues, TecLogistics argues that there is no evidence of damages from fraud because any evidence of Dresser-Rand's future loss of business was speculative, and because Dresser-Rand mitigated its damages by passing TecLogistics' overcharges through to Dresser-Rand's customers.[3]

In its cross-appeal, Dresser-Rand contends that the trial court abused its discretion in failing to submit its fraud claim against Treurniet to the jury.

## III.  TECLOGISTICS' APPEAL

Because TecLogistics did not object to the jury charge, we analyze its legal-sufficiency challenges by determining whether the evidence at trial would have enabled reasonable and fair-minded jurors following the charge's instructions to make the challenged findings.  *See Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 406–07 (Tex. 2016).  To make this determination, we review the evidence in the

---

[2] The jury apparently rounded its damage findings to the nearest dollar, and the parties do not complain of the *de minimus* difference between the amounts found by the jury and the evidence on which Dresser-Rand relied.

[3] We have reordered TecLogistics' issues to keep all of the arguments regarding the same claims together.

light most favorable to the verdict and draw all reasonable inferences in support of the findings. *See Ford Motor Co. v. Castillo*, 444 S.W.3d 616, 620–21 (Tex. 2014) (op. on reh'g) (per curiam) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 821–22 (Tex. 2005)). Because the opposing party bore the burden of proof on each of the challenged findings, we will conclude that the evidence is legally insufficient only if no more than a scintilla of evidence supports it. *See Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014).

## A.     Breach-of-Contract Damages

TecLogistics does not challenge the directed verdict against it regarding its liability to Dresser-Rand for breach of contract, but does contend that no evidence supports the contract damages of $7,306.00 assessed by the jury and awarded by the trial court. Dresser-Rand's director of supply-chain management Caldwell Hart testified that, based on a "Supplier Payment History Report," TecLogistics owed Dresser-Rand that amount. These are not, however, damages caused by TecLogistics' breach of contract.

The Supplier Payment History Report indicates that Dresser-Rand initially paid a single TecLogistics invoice in the amount of $7,306.24. This amount is supported by TecLogistics' invoice labeled "TEC3168." The Report also shows that Dresser-Rand later wired nearly $69,000 to TecLogistics as payment for several invoices.[4] Hart testified that this large payment included a second payment of $7,306.24 for invoice TEC3168. According to Hart, "we double paid this invoice." Hart stated that double payments occasionally happen in companies of Dresser-Rand's size, and that when this occurs, "[w]e'll typically notify the supplier and ask to have that money remitted back to us." Hart admitted, however, that Dresser-Rand

---

[4] Dresser-Rand presented conflicting evidence about the dates of these payments.

5

did not do so in this instance, and that, to his knowledge, the overpayment had not been returned. Based on this evidence, Dresser-Rand's counsel argued to the jury, "You heard Caldwell Hart talk about that, $7,306.24 for the breach of contract that occurred. You heard him talk about that. We paid twice, you didn't pay it back, you owe it to us."

But, the jury was not asked to measure breach-of-contract damages by the amount by which Dresser-Rand paid an amount greater than that agreed; the jury was asked to find Dresser-Rand's "damages, if any, that resulted from TecLogistics' *charging* an amount greater than that agreed."[5] Although there is evidence that Dresser-Rand paid a single invoice for $7,306.24 twice, there is no evidence that TecLogistics charged this amount twice.

We sustain this issue and modify the judgment to delete the award of $7,306.00 as breach-of-contract damages. We therefore do not address TecLogistics' remaining argument about these damages.[6]

## B. Fraud Damages

Predicated on its finding that TecLogistics committed fraud against Dresser-Rand, the jury was asked to assess damages measured by "[t]he difference, if any, between the value of the services provided by Pentagon Freight Services, Inc. to TecLogistics, and the value of the services fraudulently claimed by TecLogistics to have been performed by Pentagon Freight Services, Inc." Based on this instruction, the jury assessed fraud damages of $5,881.00.

---

[5] Emphasis added.

[6] For the parties' reference, we sustain TecLogistics' third issue and do not reach its fourth issue.

6

The fraud damages found by the jury are supported by the evidence. The jury was able to compare Pentagon's real invoices with TecLogistics' false Pentagon invoices for the same services. The uncontroverted evidence showed that in each of four invoices, TecLogistics falsely stated the amount Pentagon charged, and that Dresser-Rand paid TecLogistics' invoices containing the inflated charges. Although Pentagon charged TecLogistics a total of only $2,300.77 for its services, TecLogistics represented to Dresser-Rand that Pentagon had charged TecLogistics a total of $8,181.73—a difference of $5,880.96.

Treurniet agreed at trial that the amounts TecLogistics actually paid Pentagon are shown only in the real Pentagon invoices. She also admitted that she chose the amount TecLogistics charged Dresser-Rand for Pentagon's services and that she created the false Pentagon invoices TecLogistics sent Dresser-Rand as support for those charges. Although Treurniet also testified that she acted in accordance with the instructions of a Dresser-Rand employee, we must assume that the jury did not find her testimony credible. *See Wilson*, 168 S.W.3d at 819. Because we cannot say that the jury's credibility determination was itself unreasonable, we must defer to it. *See id.* at 820; *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (per curiam).

Despite Treurniet's admissions, TecLogistics challenges the jury's fraud findings on two grounds. First, TecLogistics argues that both the jury's fraud-liability finding and its fraud-damages finding must be reversed because damages are an essential element of a fraud claim,[7] and "speculation about possible future loss of business" is not evidence of actual damages caused by fraud. The "speculation about possible future loss of business" to which TecLogistics refers is Hart's trial testimony that if Dresser-Rand passed TecLogistics' false Pentagon

_____

[7] *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (including among the elements of common-law fraud, "the party suffered injury").

7

invoices on to a customer, then Dresser-Rand could lose business. As a second ground for reversal, TecLogistics asserts that Dresser-Rand suffered no actual monetary loss from the false representations about Pentagon's charges because Dresser-Rand passed those charges on to its customers.

Both arguments fail for the same reason: in reviewing the legal sufficiency of the evidence to support the fraud-damages finding, we are bound by the instructions given to the jury and by the presumption that the jury followed those instructions. *See Seger*, 503 S.W.3d at 407. The charge required the jury consider one measure of damages "and none other." The charge specified that Dresser-Rand's fraud damages were equal to the difference, if any, between (1) the value of Pentagon's services, and (2) the value of Pentagon's services as fraudulently claimed by TecLogistics. Thus, the jury could neither increase the resulting figure by adding the value of Dresser-Rand's possible future loss of business, nor decrease it by the extent to which Dresser-Rand was reimbursed for the inflated charges from a collateral source. Of course, the jury was also instructed to consider whether the claimed amounts were "damages . . . that resulted from such fraud." But this causation requirement also did not require the jury to deduct any recovery from another source, as a fraud victim may recover out-of-pocket damages based on the difference between the value paid and the value received. *See Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 775 (Tex. 2009) (per curiam).

Because the evidence is legally sufficient to support the fraud damages assessed in accordance with the jury's instructions, we overrule TecLogistics' issues challenging the jury's fraud-liability and fraud-damages findings, and we affirm the portion of the judgment giving effect to those findings.

## IV. Dresser-Rand's Appeal

In its sole appellate issue, Dresser-Rand argues that the trial court improperly refused Dresser-Rand's written request to submit its proposed jury question (and its accompanying instructions and definitions) regarding Treurniet's liability for common-law fraud. We review a trial court's jury-charge rulings for abuse of discretion. *See Sw. Energy Production. Co. .v Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016). Because Dresser-Rand intended to rely on its proposed question, instructions, and definitions, we will conclude that the trial court's refusal to submit them constitutes reversible error only if Dresser-Rand's question, instructions, and definitions (a) were raised by the written pleadings and the evidence; (b) were written in substantially correct wording; and (c) were not merely different shades of questions, instructions, and definitions that already had been properly included in the charge. *See* Tex. R. Civ. P. 278.

According to Dresser-Rand, the record shows that these requirements have been satisfied. Dresser-Rand's live pleadings show that it asserted its fraud counterclaim against "Plaintiffs," and Treurniet is a co-plaintiff with TecLogistics. The evidence is legally sufficient to show that TecLogistics committed common-law fraud: it knowingly made a false representation of a material fact, intending Dresser-Rand to act upon it, and Dresser-Rand did act in reliance on the misrepresentation, paying TecLogistics more than triple the amount of Pentagon's actual charges. *See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 524 (Tex. 1998) (listing all the elements of common-law fraud). Moreover, a corporation can act only through human agents,[8] and the evidence established that Treurniet is the agent through which TecLogistics acted to defraud Dresser-Rand: she admitted that

---

[8] *See In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 762 (Tex. 2006) (orig. proceeding) (per curiam) (citing *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995)).

she decided, in her capacity as TecLogistics' owner and president, the amount TecLogistics would charge Dresser-Rand for Pentagon's services and that she created the false Pentagon invoices to back up those charges.

But, a corporation is a separate legal entity from its shareholders, officers, and directors,[9] and as a general rule, "the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts." *Holloway v. Skinner*, 898 S.W.2d 793, 795 (Tex. 1995). For Treurniet to be individually liable for these acts, more is required.

## A.    Texas Business Organizations Code Section 21.223

The additional elements that must be proved to hold a corporate shareholder or officer individually liable are found in Texas Business Organizations Code section 21.223:

> (a)    A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation, may not be held liable to the corporation or its obligees with respect to:
>
> . . . .
>
> (2)    any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory . . . .
>
> . . . .
>
> (b)    Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber, or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or

---

[9] *See Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.) (citing *Sparks v. Booth*, 232 S.W.3d 853, 868 (Tex. App.—Dallas 2007, no pet.)).

affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee *primarily for the direct personal benefit* of the holder, beneficial owner, subscriber, or affiliate.

TEX. BUS. ORGS. CODE ANN. § 21.223 (West 2012) (emphasis added). As can be seen, subsection (a)(2) prevents an individual from being held individually liable for certain claims, unless the additional elements found in subsection (b) are proved.[10]

Dresser-Rand argues that section 21.223(a)(2)'s exemption from liability does not apply to these facts, but that if it does, then Treurniet nevertheless is liable under the exception of subsection (b). We therefore begin our discussion by showing that the statute's language encompasses Dresser-Rand's fraud claim against Treurniet. We will then address Dresser-Rand's arguments to the contrary, which require us to describe the statute's history and how it has changed over time. Having explained our reasons for concluding that subsection (a)(2)'s exemption from liability applies, we will then discuss Dresser-Rand's alternative argument that subsection (b)'s exception to the exemption applies.

### 1. *The statute applies to these litigants, and to this fraud claim.*

Under Section 21.223(a)(2)'s unambiguous terms, it applies only if its requirements are satisfied concerning the (1) the form of the entity with which the defendant must have a relationship, (2) the nature of the defendant's relationship to the entity, (3) the connection between the claims from which the defendant seeks protection and an obligation of the corporation; (4) the plaintiff's connection to the entity with which the defendant has a relationship, and (5) the basis on which the plaintiff seeks to hold the defendant individually liable.

---

[10] There are two additional exceptions in which a person will not be exempt from liability even if all of the requirements of section 21.223(a)(2) are satisfied. *See id.* §§ 21.224, 21.225. We describe these exceptions in section IV.A.2, *infra*.

First, the statute applies only if the entity with which the defendant has a relationship is a corporation.[11] *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2). This requirement is met because it is undisputed that TecLogistics, the entity with which defendant Treurniet has a relationship, is a corporation.

Second, the statute bars a defendant's individual liability only if the defendant's relationship with the corporation is that of a "holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner, or subscriber or of the corporation." *See id.* Treurniet is such a person.[12] All parties agree that Treurniet is TecLogistics' owner and president. Treurniet judicially admitted in her live pleadings that she is TecLogistics' owner and principal,[13] and Dresser-Rand refers in its appellate brief to Treurniet's "ownership interest in the company." In addition, Pentagon's representative testified at trial that Treurniet is TecLogistics' president, and on appeal, all parties refer to Treurniet as TecLogistics' president. Thus, as an owner and president of the corporation, Treurniet is both TecLogistics' shareholder and its "affiliate." *See* TEX. BUS. ORGS. CODE ANN. § 1.002(1) (West Supp. 2016) (stating that, as used in the Texas Business Organizations Code, "'[a]ffiliate' means a person who controls, is controlled by, or is under common control with another

---

[11] A separate provision now extends section 21.223's application to include limited liability companies. *See id.* § 101.002(a).

[12] For the purpose of the statute, we characterize Dresser-Rand as the plaintiff and Treurniet and TecLogistics as defendants because, although the suit originally was filed by TecLogistics, its claims were eliminated before trial, leaving only Dresser-Rand's counterclaims against TecLogistics and Treurniet.

[13] *See Hous. First Am. Sav. v. Musick*, 650 S.W.2d 764, 767 (Tex. 1983) ("Assertions of fact, not pled in the alternative, in the live pleadings of a party are regarded as formal judicial admissions.").

12

person"); *id.* § 1.002(69-b) (defining "person" to include individuals, corporations, and other organizations and legal entities).

Third, section 21.223(a)(2) shields the defendant shareholder or affiliate from individual liability only "with respect to . . . any contractual obligation of the corporation or any matter relating to or arising from the obligation." *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2). This required connection between individual liability and corporate contractual obligation, too, is satisfied. TecLogistics' contractual obligations to Dresser-Rand were not only to forward freight to and from Dresser-Rand's customers, but also to provide documentation to Dresser-Rand to support its charges. As Hart explained, Dresser-Rand requires documentation to support a freight-forwarder's invoice because the company typically passes freight-forwarding charges through to the customer, and Dresser-Rand "ha[s] to provide invoice and documentation when we bill the client showing what those charges are." To ensure the accuracy of those charges, a freight-forwarder's invoice and its supporting documentation is first reviewed by Dresser-Rand's accounts-payable department to see that they match. The same review is repeated by those responsible for supply-chain management. Dresser-Rand additionally conducts internal audits to ensure that the documentation is in order. Because the parties agreed that TecLogistics would provide documentation to support its subcontractor's charges, Dresser-Rand's claim that Treurniet provided fabricated documents is a claim "relating to arising from" TecLogistics' contractual obligations to Dresser-Rand.

Fourth, the statute shields an individual defendant from liability only to "the corporation or its obligees." *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a). In the contractual obligations to forward freight and to supply documentation supporting a subcontractor's charges, TecLogistics is the obligor and Dresser-Rand is the obligee. *Compare Obligor*, BLACK'S LAW DICTIONARY (6th ed. 1990) ("A promisor. The

person who has engaged to perform some obligation.") *with id. Obligee* (defining "obligee" as "[a] promisee. The person in favor of whom some obligation is contracted, whether such obligation be to pay money or to do or not to do something."). Because claimant Dresser-Rand is TecLogistics' obligee, this portion of the statute is satisfied.

And fifth, the statute applies only if the basis of the individual defendant's liability is that the defendant "is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud, or other similar theory." *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2). Dresser-Rand is seeking to hold Treurniet liable to it on the basis of "actual fraud." "Actual fraud usually involves dishonesty of purpose or intent to deceive,"[14] and Dresser-Rand alleged that "Plaintiffs" made false, material representations "with the intent to deceive and defraud Dresser-Rand"; thus, Dresser-Rand alleged actual fraud. This allegation also was supported by the evidence: Treurniet knew what Pentagon actually charged, but she admittedly created the false Pentagon invoices, and she personally signed the TecLogistics' invoices incorporating the knowing misrepresentations. She admits that no one else at TecLogistics was involved in creating and tendering the invoices. Treurniet, then, was the human agent through which TecLogistics committed actual fraud against Dresser-Rand.

Because all five of section 21.223(a)(2)'s requirements have been satisfied, the statute's terms barring individual liability apply to Dresser-Rand's fraud claim against Treurniet.

---

[14] *Archer v. Griffith*, 390 S.W.2d 735, 740 (Tex. 1964).

14

## 2. *Dresser-Rand's Counter-Argument*

In arguing that Treurniet can be held liable to it for fraud despite the statute's terms, Dresser-Rand relies exclusively on the common law.  The short answer to that reliance is found in Texas Business Organizations Code sections 21.224 and 21.225.  They provide that liability "for an obligation that is limited by Section 21.223 is exclusive and preempts any other liability imposed for that obligation under common law or otherwise," *see id.* § 21.224, unless one of two exceptions applies.  *See id.* § 21.225.  A person's liability is not limited if that person "(1) expressly assumes, guarantees, or agrees to be personally liable to the obligee for the obligation; or (2) is otherwise liable to the obligee for the obligation under [the Business Organizations Code] or other applicable statute."  *Id.*  No one alleged or offered evidence that either exception applies here.

The short answer, however, is not the complete answer.  It does not explain why, at first blush, many cases—a number of which are cited by Dresser-Rand— appear to hold an individual liable with respect to a matter relating to or arising from a corporate obligation even when the requirements of section 21.223(a)(2) have been satisfied.  Most of these apparent inconsistencies are explained by the statute's history.

### (a) The history of Texas Business Organizations Code sections 21.223–.225

The substance of Texas Business Organizations Code section 21.223 first began to be codified in 1989, when the legislature amended the statute's predecessor, Texas Business Corporations Act art. 2.21.[15]  In this early version, the statute protected only shareholders, subscribers, and owners of a beneficial interest in

---

[15] *See* Act of May 12, 1989, 71st Leg., R.S., ch. 217, § 1, 1989 TEX. GEN. LAWS 974, 974–75 (eff. Aug. 28, 1989); Act of May 26, 1989, 71st Leg., R.S., ch. 801, § 7, 1989 TEX. GEN. LAWS 3610, 3617 (eff. Aug. 28, 1989).

shares; shielded them only from the corporation's contractual obligations; and applied only if the claimant sought to hold an individual liable based on actual fraud, constructive fraud, sham to perpetrate a fraud, or failure to observe corporate formalities and statutory requirements.[16] Then, as now, the statute's protection was unavailable if the person caused the corporation to commit actual fraud primarily for the person's direct personal benefit.[17] And just as in the current version of the statute, the earlier provision did not shield an individual from statutory liabilities or from liabilities that the person expressly assumed or guaranteed.[18]

The statute did not expressly preempt the common law until 1993.[19] When adding that provision, the legislature also expanded the statute's reach slightly, so that it applied when the claimant sought to impose liability based not only on actual or constructive fraud or sham to perpetrate a fraud, but also on any "other similar theory" or on alter ego.[20]

It was not until 1997 that the statute reached its current breadth. At that time, the legislature expanded the scope of the statute's protection so that covered persons were protected from liability not only for the corporation's contractual obligations

---

[16] *See* Act of May 12, 1989, 71st Leg., R.S., ch. 217, § 1, 1989 TEX. GEN. LAWS at 974–75; Act of May 26, 1989, 71st Leg., R.S., ch. 801, § 7, 1989 TEX. GEN. LAWS at 3617.

[17] *See* Act of May 12, 1989, 71st Leg., R.S., ch. 217, § 1, 1989 TEX. GEN. LAWS at 975.

[18] *Compare* Act of May 12, 1989, 71st Leg., R.S., ch. 217, § 1, 1989 TEX. GEN. LAWS at 975 *and* Act of May 26, 1989, 71st Leg., R.S., ch. 801, § 7, 1989 TEX. GEN. LAWS at 3617 *with* TEX. BUS. ORGS. CODE ANN. § 21.225 (stating that section 21.223 does not limit a person's liability to a corporation's obligee if the person expressly assumed or guaranteed the obligation or "is otherwise liable to the obligee for the obligation under this code or other applicable statute").

[19] *See* Act of May 7, 1993, 73rd Leg., R.S., ch. 215, § 2.05, 1993 TEX. GEN. LAWS 418, 446 (eff. Sept. 1, 1993).

[20] *See id.*

but also for "any matter relating to or arising from the obligation."[21]  The legislature also enlarged the classes of persons who were protected by the statute to include not only shareholders, subscribers, and owners of beneficial interests in shares, but also "any affiliate thereof or of the corporation."[22]  An "affiliate" was defined as "a person who directly or indirectly through one or more intermediaries controls, is controlled by, or is under common control with a specified person."[23]  With this change, the statute began to shield those with the right to control the corporation, even if they had no actual or beneficial ownership interest.

In the intervening years, there have been several technical changes but only one significant substantive change.  The most notable technical change is that, due to recodification, article 2.21 of the Texas Business Corporations Code has instead appeared since 2006 as sections 21.223–.225 of the Texas Business Organizations Code.[24]  Substantively, the legislature expanded the reach of sections 21.223–.225 in 2011, so that they now protect not only corporations and their affiliates, but also limited liability companies and their members, owners, assignees, affiliates, and subscribers.  *See* TEX. BUS. ORGS. CODE ANN. § 101.002 (West 2012).[25]

With that history in mind, we turn to Dresser-Rand's arguments that caselaw prevents Treurniet from being statutorily shielded from liability.

---

[21] Act of May 13, 1997, 75th Leg., R.S., ch. 375, § 7, 1997 TEX. GEN. LAWS 1516, 1522 (eff. Sept. 1, 1997).

[22] *Id*., 1997 TEX. GEN. LAWS at 1522–23.

[23] *Id.* § 47, 1997 TEX. GEN. LAWS at 1556.

[24] *See* Act of May 13, 2003, 78th Leg., R.S., ch. 182, § 1, secs. 21.223–.225, 2003 TEX. GEN. LAWS 267, 427 (eff. Jan. 1, 2006).

[25] *Added by* Act of Apr. 20, 2011, 82d Leg., R.S., ch. 25, § 1, 2011 TEX. GEN. LAWS 45, 45.

**(b)     Caselaw's apparent divergence from the statutory liability shield**

Dresser-Rand begins by stating that section 21.223 limits a shareholder's liability only for a corporation's debts or contractual obligations.  As authority for this proposition, Dresser-Rand cites *Willis v. Donnelly*, 199 S.W.3d 262, 271–72 (Tex. 2006).  What the court actually said in that case was that "the Legislature in 1989 narrowly prescribed the circumstances under which a shareholder can be held liable for corporate debts."  *Id.*  That is a correct statement about the scope of the statute in 1989, but as we have just seen, the statute provides much more robust protection today.

Dresser-Rand additionally emphasizes two cases in which individual business owners were held personally liable for damages resulting from a company's fraudulent invoices.  *See Clayton v. Parker*, No. 13-09-00399-CV, 2010 WL 3180364, at *7 (Tex. App.—Corpus Christi Aug. 12, 2010, no pet.) (mem. op.); *Daugherty v. Jacobs*, 187 S.W.3d 607, 618 (Tex. App.—Houston [14th Dist.] 2006, no pet.).  But unlike the case before us, the liability shield provided by section 21.223 and its predecessor article 2.21 would not have applied to either of the cases that Dresser-Rand cites.  This is so for at least two reasons.

First, as previously mentioned, the statute shields certain individuals from liability in matters relating to or arising from "any contractual obligation *of the corporation*." TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2) (emphasis added).  In the cases Dresser-Rand cites, the defendants were not held liable in matters arising from a corporation's contractual obligations.  The fraudulent invoices in *Clayton* instead were issued by limited partnerships. *See Clayton*, 2010 WL 3180364, at *7 (stating that the appellants contend the court "should ignore the limited partnership structure").  The invoices in *Daugherty* appear to have been those of a limited

18

liability company,[26] but the statute's protection from liability was not extended to include matters arising from a limited liability company's contractual obligations until 2011—five years after *Daugherty* was decided.[27]

Second, even when the statute bars liability that otherwise might be imposed under the common law, the statute provides no protection from liability imposed by another statute. *See* TEX. BUS. ORGS. CODE ANN. § 21.225(2). In *Clayton* and *Daugherty*, the statute would not have protected the defendants because a different statute imposed individual liability on them for the damages awarded. *See Clayton*, 2010 WL 3180364, at *2 n.10 (quoting the language of the charge tracking Texas Penal Code section 32.46, for which Texas Civil Practice and Remedies Code section 33.013(b)(2)(K) holds each liable defendant jointly and severally liable for the claimant's recoverable damages); *see also id.* § 33.011(2) (as used in Texas Civil Practice and Remedies Code chapter 33, "defendant" "includes *any person* from whom, at the time of the submission of the case to the trier of fact, a claimant seeks recovery of damages") (emphasis added); *Daugherty*, 187 S.W.3d at 612 ("This is a Deceptive Trade Practices (DTPA) case.");[28] *see also Miller v. Keyser*, 90 S.W.3d 712, 714 (Tex. 2002) (explaining that because the DTPA's language specifies that a consumer may sue "*any person*," an agent for a disclosed principal can be held

---

[26] *See Daugherty*, 187 S.W.3d at 613 (not mentioning the form of the business entity K & K Vintage Motorcars, but stating that the business's appeal was severed and stayed); *K & K Vintage Motorcars, L.C. v. Jacobs*, No. 14-05-00553-CV, 2010 WL 975000, *1 (Tex. App.—Houston [14th Dist.] Mar. 18, 2010, no pet.) (per curiam) (mem. op.) (identifying the business as "K & K Vintage Motorcars, L.C."); TEX. BUS. ORGS. CODE ANN. § 5.056(a) (West 2012) (stating that the limited liability company's name must include the phrase "limited liability company," or the phrase "limited company," or an abbreviation of one of those phrases).

[27] *See* TEX. BUS. ORGS. CODE ANN. § 101.002(a) (West 2012); Act of Apr. 20, 2011, 82d Leg., R.S., ch. 25, § 2, 2011 TEX. GEN. LAWS 45, 45 (identifying the legislation's effective date as September 1, 2011).

[28] *See* the Deceptive Trade Practices–Consumer Protection Act, TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011 & Supp. 2016).

statutorily liable under the DTPA for false representations made in the course and scope of the agent's employment) (emphasis added).[29]

Of the remaining cases relied upon by Dresser-Rand as support for its position that Treurniet can be held personally liable, most do not mention section 21.223 or its predecessor.[30] The parties do cite some cases in which the Texas Business Organizations Code section 21.223 or its predecessor is discussed, but in those cases the authoring court held that the statute protected the individual defendants from personal liability,[31] unless the defendant caused the corporation to commit actual fraud primarily for the defendant's direct personal benefit.[32]

---

[29] The same is true of another of this court's decisions that Dresser-Rand cites. *See Sheffield v. Gibson*, No. 14-06-00483-CV, 2008 WL 190049, at *4 (Tex. App.—Houston [14th Dist.] Jan. 22, 2008, no pet.) (mem. op.) (defendants were statutorily liable for fraud in a real estate transaction); TEX. BUS. & COM. CODE ANN. § 27.01(b), (c) (West 2015) ("A person who makes a false representation or false promise commits [fraud in a real estate or stock transaction] and is liable to the person defrauded for actual damages.").

[30] *See, e.g.*, *Miller v. Keyser*, 90 S.W.3d 712 (Tex. 2002); *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369 (Tex. 1984) (op. on reh'g); *Nwokedi v. Unlimited Restoration Specialists, Inc.*, 428 S.W.3d 191 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *Physio GP, Inc. v. Naifeh*, 306 S.W.3d 886 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Sanchez v. Mulvaney*, 274 S.W.3d 708 (Tex. App.—San Antonio 2008, no pet.); *Graham Land & Cattle Co. v. Indep. Bankers Bank*, 205 S.W.3d 21 (Tex. App.—Corpus Christi 2006, no pet.); *Morris v. Kohls-York*, 164 S.W.3d 686 (Tex. App.—Austin 2005, pet. dism'd); *Cimarron Hydrocarbons Corp. v. Carpenter*, 143 S.W.3d 560 (Tex. App.—Dallas 2004, pet. denied); *Gore v. Scotland Golf, Inc.*, 136 S.W.3d 26 (Tex. App.—San Antonio 2003, pet. denied) (op. on reh'g); *Holberg v. Teal Constr. Co.*, 879 S.W.2d 358 (Tex. App.—Houston [14th Dist.] 1994, no writ).

[31] *See, e.g.*, *Willis*, 199 S.W.3d at 270–73 (defendant not liable where jury failed to find fraud or a similar theory, and defendant did not expressly assume personal liability for corporate obligations); *TransPecos Banks v. Strobach*, 487 S.W.3d 722, 736–37 & n.11 (Tex. App.—El Paso 2016, no pet.) (no evidence defendant committed actual fraud or that she received a direct personal benefit); *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 388–89 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (no evidence defendant's fraud was primarily for his direct personal benefit); *Harco Energy, Inc. v. Re-Entry People, Inc.*, 23 S.W.3d 389, 397 (Tex. App.—Amarillo 2000, no pet.) (legally insufficient evidence of fraud); *Menetti v. Chavers*, 974 S.W.2d 168, 174 (Tex. App.—San Antonio 1998, no pet.) (legally insufficient evidence of actual fraud).

[32] *See Tryco Enters., Inc. v. Robinson*, 390 S.W.3d 497, 511 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd) ("Robinson has borne his burden of producing proof sufficient to justify

20

In a notable exception, Dresser-Rand points out one case in which the reviewing court discussed the statute, but refused to apply it based on common-law principles. *See Kingston v. Helm*, 82 S.W.3d 755 (Tex. App.—Corpus Christi 2002, pet. denied). In *Kingston*, the president of a corporate real estate developer made misrepresentations about a townhome in the course of selling it to the plaintiff. *See id.* at 757. Our sister court concluded that the statute was intended to apply only in very limited circumstances—more limited, we believe, than is consistent with the statute's plain language. We disagree with the *Kingston* court's reasoning because it reached its conclusion that the statute has only limited application by relying on cases that predated the relevant statutory amendments, or that dealt with liability imposed by another statute.

Dresser-Rand similarly relies on *Walker v. Anderson*, 232 S.W.3d 899, 918 (Tex. App.—Dallas 2007, no pet.), in which the authoring court cited *Kingston* for the proposition that "[i]t is not necessary to pierce the corporate veil in order to impose personal liability, as long as it is shown that the corporate officer knowingly participated in the wrongdoing." But, liability in *Walker* was not based on the corporation's owner's "knowing participation"; because liability in that case instead was based on article 2.21, the stated proposition is dicta. Further, the *Walker* court agreed with the trial court "that the evidence submitted at trial supports a judgment that Walker used [the corporation] for the purpose of perpetrating, and did perpetrate an actual fraud on the [the appellees] for the direct personal benefit of Walker, the

---

piercing the corporate veil under article 2.21 or Business Organizations Code section 21.223 . . . ."); *Walker v. Anderson*, 232 S.W.3d 899, 916–17 (Tex. App.—Dallas 2007, no pet.) (agreeing with the trial court's conclusion of law that appellant used the corporation "for the purpose of perpetrating, and did perpetrate an actual fraud on the [appellees] for the direct personal benefit of [the appellant]"); *Cass v. Stephens*, 156 S.W.3d 38, 58–60 (Tex. App.—El Paso 2004, pet. denied) (holding the evidence legally and factually sufficient to support finding that defendant perpetrated actual fraud for his own direct benefit).

sole shareholder and director of [the corporation], *in violation of Article 2.21(a)(2).*" *See id.* at 916 (emphasis added).

## B.      The "Direct Personal Benefit" Exception

Because all of the requirements of section 21.223(a)(2) are satisfied, Treurniet cannot be held liable to Dresser-Rand for the fraud at issue in this case unless the additional requirements of section 21.223(b) are satisfied. Under that subsection, Treurniet could be liable to Dresser-Rand if she "caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for [her] direct personal benefit."

Dresser-Rand did not allege in its written pleadings that Treurniet acted primarily for her direct personal benefit, and it presented no such evidence at trial. It also proposed no jury question that would have permitted such a finding; Dresser-Rand's proposed jury question on fraud liability addressed the elements of common-law fraud, but would have allowed the jury to hold Treurniet liable without evidence that she acted primarily for her direct personal benefit. *But see R.R. Comm'n of Tex. v. Gulf Energy Expl. Corp.,* 482 S.W.3d 559, 571 (Tex. 2016) ("Generally, a question on a statutory cause of action or defense 'should track the language of the provision as closely as possible.'" (quoting *Borneman v. Steak & Ale of Tex., Inc.,* 22 S.W.3d 411, 413 (Tex. 2000) (per curiam))).

Because Texas Business Organizations Code section 21.223(a)(2) shields Treurniet from liability and no exception to that shield applies, we conclude that the trial court did not abuse its discretion in failing to submit to the jury a question about Treurniet's individual liability to Dresser-Rand for fraud.[33]

---

[33] The proposed fraud-liability question served as the predicate for a fraud-damages question that included Treurniet's liability, and the damages question was in turn the predicate for a proportionate-responsibility question. The trial court necessarily refused these questions as well,

## V. CONCLUSION

Regarding TecLogistics' appeal, we conclude that, when measured against the language of the charge, no evidence supports the jury's assessment of damages for breach of contract. We accordingly modify the judgment to eliminate this award. The jury's fraud finding, on the other hand, is supported by the evidence. As for Dresser-Rand's cross-appeal, we conclude that the trial court did not abuse its discretion in refusing to submit to the jury Dresser-Rand's fraud claim against Treurniet in her individual capacity. Thus, as modified, we affirm the trial court's judgment.

/s/    Tracy Christopher
Justice

Panel consists of Justices Christopher, Busby, and Jewell.

---

and Dresser-Rand contends all of the trial court's jury-charge rulings concerning the fraud claim against Treurniet were erroneous. Because we conclude that the trial court did not abuse its discretion in refusing to submit the first proposed question in this chain, we necessarily conclude that the trial court did not abuse its discretion in refusing to submit any other questions that were dependent on a finding that Treurniet is personally liable to Dresser-Rand for common-law fraud.