

# NUMBER 13-21-00342-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

ANTHONY LEO SHERIDAN
AND CCS ASSET MANAGEMENT, INC.,                    Appellants,

v.

KELLI D. WILLIAMS,
MICHAEL RICHARDSON,
AND SCOUTVIEW SPORTS,                              Appellees.

### On appeal from the 26th District Court
### of Williamson County, Texas.

# MEMORANDUM OPINION

### Before Justices Benavides, Longoria, and Tijerina
### Memorandum Opinion by Justice Benavides

This case stems from a dispute over a real estate transaction and involves claims

for breach of contract, statutory fraud, and an alter ego theory of liability. After granting

appellees, Kelli D. Williams, Michael Richardson, and ScoutsView Sports's (ScoutsView)

motion for partial summary judgment, the trial court signed an order awarding damages. By four issues that we have reordered, appellants Anthony Leo Sheridan and CCS Asset Management, Inc. (CCS) claim: (1) the underlying order is not a final and appealable order; (2) a genuine issue of material fact precluded summary judgment on the statutory fraud claim; (3) summary judgment on the breach of contract claim was improper because an "Advisory Committee" was a necessary party; and (4) Sheridan could not be held individually liable because alter ego was not adequately shown. We affirm in part and reverse and remand in part.

## I. BACKGROUND[1]

In 2016, Williams, Richardson, and ScoutsView discussed Williams's interest in investing in ScoutsView. At the time, Williams owned a residential property (the Property) that had been in her family for several decades. Williams, Richardson, and ScoutsView agreed to leverage the Property as collateral to secure funding for Williams to invest in ScoutsView.

Around September of that same year, Richardson, on behalf of ScoutsView, and Williams spoke to Sheridan about brokering a loan to facilitate Williams's investment in ScoutsView. According to the pleadings, Sheridan is a broker, and the Vice President of CCS. A "Corporate Partnership Agreement" was executed between CCS and ScoutsView. Sheridan signed on behalf of CCS, and Richardson signed on behalf of ScoutsView. Williams was not a signatory to the contract.

---

[1] This appeal was transferred to this Court from the Third Court of Appeals in Austin by order of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (granting the supreme court the authority to transfer cases from one court of appeals to another at any time that there is "good cause" for the transfer).

The stated purpose of the Corporate Partnership Agreement was to use the Property as collateral to secure funding for the parties to invest in ScoutsView. According to the Corporate Partnership Agreement, Williams would first use the Property as collateral to net approximately $80,000, which Williams would use to invest in ScoutsView. The Corporate Partnership Agreement provided that a second note would be executed, and CCS would invest a minimum of "50% or $47,500" in ScoutsView. It further set forth that an "Advisory Partnership" would be formed, and that partnership would have "the full, exclusive and absolute right, power and authority to manage and control the [p]artnership and the property, assets[,] and business thereof." The partnership would also approve work and construction on the Property. Williams was listed as a member of this partnership, but Sheridan was not. Notably, the Corporate Partnership Agreement also provided that "CCS . . . SHALL ALLOW [ScoutsView] TO PURCHASE [the Property] FROM CCS . . . AT ANY TIME."

It is undisputed that in August of 2017, CCS and Sheridan sold the Property without notifying Williams, Richardson, or ScoutsView. That same month, Williams, Richardson, and ScoutsView filed suit against Sheridan and CCS for common law fraud.[2] After filing multiple amended petitions, Williams, Richardson, and ScoutsView finally filed a third amended petition, and their live pleading in this case, on August 30, 2018, asserting causes of action against Sheridan and CCS for common law fraud, statutory fraud, and breach of contract. They also asserted that Sheridan was the alter ego of CCS.

---

[2] A co-defendant, Kensington Peavy, LLC, was added to the case in September of 2017, but was later severed out in September of 2018. Kensington Peavy, LLC, was allegedly the party to whom CCS and Sheridan sold the Property. It is not a party to this appeal.

On May 29, 2019, Williams, Richardson, and ScoutsView filed a partial motion for summary judgment seeking judgment as a matter of law solely on their breach of contract and statutory fraud claims. Attached to the motion were affidavits from Williams and Richardson, deemed admissions by Sheridan and CCS, the Corporate Partnership Agreement, and an affidavit from plaintiffs' counsel concerning the deemed admissions.

Sheridan and CCS filed their summary judgment response on July 17, 2019. Attached to their response was a deed of trust concerning the Property, a contract between Williams and CCS, and affidavits by Sheridan and Robert E. Turner, who claimed to have observed the execution of the Corporate Partnership Agreement. Williams, Richardson, and ScoutsView objected to CCS and Sheridan's summary judgment response on the basis that it included unsworn factual assertions. They also objected to two paragraphs of Sheridan's affidavit on the basis that those paragraphs contained statements that were "self-serving," "irrelevant," and "factually incorrect." Lastly, Williams, Richardson, and ScoutsView objected to the entire affidavit of Turner on the basis that it was "irrelevant" and "contains . . . hearsay."

On November 25, 2019, the trial court sustained the objections to Sheridan and CCS's summary judgment evidence in a written order and granted summary judgment on "all claims asserted" by Williams, Richardson, and ScoutsView. A final order was signed on June 22, 2021, which determined the appropriate amount of damages. In the order, the court stated that "[b]y this order, the court disposes of the issues of appropriate damages and with the court's November 25, 2019 order, all issues in the case are now resolved."

4

CCS and Sheridan filed a motion for new trial that was overruled by operation of law. This appeal followed.

## II.  JURISDICTION

As a preliminary matter, Sheridan and CCS argue that we lack jurisdiction over this appeal because there is no final, appealable order.

### A.  Standard of Review & Applicable Law

In general, unless a statute provides otherwise, we lack jurisdiction over interlocutory orders. *Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 840 (Tex. 2007). There are two different ways a judgment issued without a conventional trial can be final for purposes of appeal: (1) if the judgment clearly and unequivocally states that it finally disposes of all claims and parties, even if it does not actually do so; or (2) if the judgment actually disposes of every pending claim and party. *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020) (per curiam).

For a judgment's language to clearly and unequivocally express finality, there is no magic language requirement. *Id.* "If the order contains a 'clear and unequivocal' finality phrase disposing of the entire case, the order is final, and the failure to actually dispose of all claims and parties renders the order erroneous but not interlocutory." *In re Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (per curiam). An order is not final merely because it is entitled final or because it uses the word final within. *Farm Bureau Cnty. Mut. Ins. v. Rogers*, 455 S.W.3d 161, 163 (Tex. 2015) (per curiam). Rather, there must be some other clear indication that the trial court intended the order to completely dispose of the case. *Id.*

5

**B.     Analysis**

Here, because it was interlocutory, the November 25, 2019 order merged into the final order. *See Bonsmara Nat. Beef Co. v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 390 (Tex. 2020). The June 22, 2021 order explains that the November 25, 2019 order "disposed of the merits of this case except for an award of damages." With the determination of damages, the court represented that "all issues in the case are now resolved." Sheridan suggests that the trial court should have used language like, "This order disposes of all parties and issues of the case and is appealable." However, the supreme court has specifically held that this phrasing, although preferred, is not required. *See In re Guardianship of Jones*, 629 S.W.3d at 924. Though the final order does not state that it disposes of all parties or is appealable, the language in this order contains clear and unequivocal language reflecting an intent to dispose of the entire case. *See Bella Palma*, 601 S.W.3d at 801–02. Thus, we must give that language effect. *See id.*

Sheridan and CCS also argue that "it is clear from the record" that their counterclaims for fraud and breach of contract were not disposed of by the final order. However, when an order's language clearly and unequivocally expresses finality, a review of the record to determine finality is not appropriate. *In re Elizondo*, 544 S.W.3d 824, 827 (Tex. 2018) (orig. proceeding) (per curiam). Therefore, we conclude that the June 22, 2021 order was a final judgment, and we have jurisdiction over this appeal. We overrule Sheridan and CCS's first issue.

### III.    SUMMARY JUDGMENT

**A.    Standard of Review**

We review de novo a trial court's decision to grant summary judgment. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018). "Summary judgment is appropriate only when there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law." *Tex. Com. Bank, N.A. v. Grizzle*, 96 S.W.3d 240, 252 (Tex. 2002). "Summary judgments must stand on their own merits, and the non-movant's failure to answer or respond cannot supply by default the summary judgment proof necessary to establish the movant's right." *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979). Only when the movant meets its burden to prove it is entitled to judgment as a matter of law does the burden then shift to the nonmovant to raise a genuine issue of material fact that precludes summary judgment. *Lujan*, 555 S.W.3d at 84.

When reviewing a traditional motion for summary judgment, we accept the nonmovant's evidence as true and indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Provident Life and Acc. Ins. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When the trial court's order does not specify the grounds for its summary judgment, "we must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Id.* at 216.

**B.    Analysis**

**1.    Statutory Fraud**

CCS and Sheridan contend that the summary judgment evidence was insufficient

7

to establish as a matter of law the elements of statutory fraud. The elements for a statutory fraud claim based on a real estate transaction are:

(1)     there was a transaction involving real estate;

(2)     during the transaction, the defendant made a false representation of fact, made a false promise, or benefited by not disclosing that a third party's representation or promise was false;

(3)     the false representation or promise was made for the purpose of inducing the plaintiff to enter into a contract;

(4)     the plaintiff relied on the false representation or promise by entering into the contract; and

(5)     the reliance caused the plaintiff injury.

*Fibela v. Wood*, 657 S.W.3d 664, 673 (Tex. App.—El Paso 2022, no pet.) (cleaned up); *see* TEX. BUS. & COM. CODE TEX ANN. § 27.01(a).

Sheridan and CCS challenge elements (2), (4), and (5). Here, Williams, Richardson, and ScoutsView sought summary judgment on the grounds that Sheridan and CCS "promised to abide by the terms of the [Corporate] Partnership Agreement," but failed to do so.[3] Sheridan and CCS contend that the summary judgment evidence does

---

[3] We note that Williams, Richardson, and ScoutsView's live pleading was much more detailed than their motion for summary judgment and corresponding summary judgment evidence. For instance, the live pleading alleged that Sheridan represented that the Property would not actually change out of Williams's name, he misrepresented the importance of the second lien on the Property, he misrepresented the reasons why the brokered loan resulted in significantly less funding than the partners originally agreed to, and he also falsely stated that "the lenders" required the Property to be in Sheridan's name, rather than in Williams's, in order to facilitate the loan.

However, none of these alleged misrepresentations were echoed in the motion for summary judgment. The facts asserted in the live pleading cannot supplant the sole ground for fraud expressly asserted in the motion for summary judgment, as pleadings are not competent summary judgment evidence, *see Laidlaw Waste Sys. (Dall.) v. City of Wilmer*, 904 S.W.2d 656, 660 (Tex. 1995), and summary judgments must stand or fall on the grounds expressly asserted in the motion for summary judgment. *See McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 237, 339 (Tex. 1993).

not show that any false statement on their part was false at the time it was made. The supreme court has "repeatedly recognized that a fraud claim can be based on a promise made with no intention of performing, irrespective of whether the promise is later subsumed within a contract." *Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors*, 960 S.W.2d 41, 46 (Tex. 1998). "A promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing at the time it was made." *Id.* at 48; *see T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 222 (Tex. 1992); *see also* TEX. BUS. & COM. CODE ANN. § 27.01(a)(2)(B) (providing that in a real estate transaction, a "false promise to do an act" may be fraudulent when it is "made with the intention of not fulfilling it").

But "[i]ntent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Therefore, it is exceedingly difficult, though not impossible, to establish that a defendant had fraudulent intent as a matter of law. *See Coleman Cattle Co. v. Carpentier*, 10 S.W.3d 430, 434 (Tex. App.—Beaumont 2000, no pet.) (explaining that summary judgment on the issue of intent is appropriate if, for instance, the defendant admits the fraud); *see also In re Estate of Anderson*, Nos. 13-07-112-CV, 13-07-131-CV, 2008 WL 3894653, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 25, 2008, pet. denied) (mem. op.) ("Issues of intent and knowledge are not susceptible to being readily controverted and are inappropriate for summary judgment.").

Here, the uncontroverted summary judgment evidence establishes that during

9

negotiations, Sheridan expressed an interest in investing in ScoutsView. Sheridan agreed to secure additional funding and to provide that funding to ScoutsView to realize his intention of investing in the business. Sheridan was aware of the significance of the Property to Williams, as it had been in her family for decades, and he was also cognizant that Williams and Richardson were "adamant" that the Property was to remain in the control of the partners to the agreement. Sheridan represented that he would have the ability to control CCS's possession and disposition of the Property. However, approximately eight months after signing the Corporate Partnership Agreement, Sheridan and CCS quickly and furtively sold the Property. ScoutsView never received the full amount of investment funding that CCS and Sheridan agreed to provide, and CCS and Sheridan ceased all involvement with ScoutsView after the sale of the Property.

Williams, Richardson, and ScoutsView assert that this issue "may simply be a matter of one's perspective of the clear evidence." However, that is precisely what precludes summary judgment in their favor on this issue. When reviewing a summary judgment, the "[e]vidence is viewed in the light most favorable to the non-movant with all reasonable inferences indulged and any doubts resolved in favor of the non-movant." *Arlington Indep. Sch. Dist. v. Tex. Atty. Gen.*, 37 S.W.3d 152, 156 (Tex. App.—Austin 2001, no pet.). Our "perspective" of the evidence, therefore, must favor Sheridan and CCS. *See id.*

According to the summary judgment evidence, Sheridan and CCS partially performed on the contract for several months. *See Oliver v. Rogers*, 976 S.W.2d 792, 804 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (explaining that situations in which

10

a "promisor had no intention of keeping [a promise] at the time he made the promise are to be distinguished from situations in which a party has made a promise with an existent intent to fulfill its terms and who then changes his mind and refuses to perform"). According to the deemed admissions, Sheridan and CCS "intended for the agreement to commence on December 16, 2016[,] and terminate on December 16, 2019, unless terminated by mutual consent of the parties or by operation of [its] provisions," and they "intended for Defendant CCS to sell the Property to . . . ScoutsView 'at any time' between December 16, 2016[,] and December 16, 2019." Sheridan and CCS asserted that they sold the property only when Williams and Richardson did not comply with certain requests *after* the contract was signed.

We agree that, through deemed admissions, Sheridan and CCS admitted to breaching the contract and behaving in a suspicious manner after the contract was signed.[4] But even so, this does not prove, as a matter of law, that Sheridan and CCS had no intention of performing at the time the contract was made. *See Spoljaric*, 708 S.W.2d at 435 ("Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made."); *Carpentier*, 10 S.W.3d at 434.

Keeping in mind the deferential light in which we view summary judgment evidence, and based on this standard, the record before us is not sufficient to establish that Sheridan and CCS never intended to fulfill their contractual obligations as a matter

---

[4] Specifically, Sheridan and CCS admitted that neither Sheridan nor CCS "obtained consent to sell the Property," that they did not give "notice to Plaintiff Richardson of Defendant CCS'[s] intention to sell the Property," and that Sheridan "wanted to consummate the sale of the Property . . . by closing 'fast' to prevent the other parties to [the Corporate Partnership Agreement] from discovering Defendant Sheridan's and Defendant CCS'[s] plan to sell the Property . . . in violation of the terms of" the Corporate Partnership Agreement.

of law. *See* TEX. BUS. & COM. CODE ANN. § 27.01(a)(2); *Arlington Indep. Sch. Dist.*, 37 S.W.3d at 156.

We sustain this issue and reverse the trial court's decision to grant summary judgment as to Williams's, Richardson's, and ScoutsView's statutory fraud claims against CCS and Sheridan, and we remand for further proceedings.[5]

### 2. Breach of Contract

Sheridan and CCS argue the trial court erred by granting Williams, Richardson, and ScoutsView's motion for summary judgment on their breach of contract claims. In liberally construing CCS and Sheridan's brief, we understand the sole joint issue they assert concerning the breach of contract claims is that granting summary judgment was improper because the advisory partnership was a necessary party to the case. However, CCS and Sheridan cite no authority in support of this issue, and they do not explain why the failure to include the advisory partnership as a party precluded the trial court from granting summary judgment on the breach of contract claim. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

Rule 93(4) of the rules of civil procedure provides a method for defendants to alert the trial court if a necessary party is not joined. *See* TEX. R. CIV. P. 93(4) (explaining that a pleading alleging "[t]hat there is a defect of parties, plaintiff or defendant," must be verified by affidavit). CCS and Sheridan did not file any verified pleading asserting that

---

[5] Because we have decided this issue in his favor, we need not address whether an inadequate showing of alter ego prevented the trial court from holding Sheridan individually liable for statutory fraud. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

12

the advisory partnership was a necessary party to this suit, and thus, we conclude this issue has not been adequately preserved for our review. *See Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 163 (Tex. 2004) ("We conclude that Northglen 'had an opportunity to raise the absence of the nonjoined person and waived it.'"); *cf. CHCA E. Hous., L.P. v. Henderson*, 99 S.W.3d 630, 633 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Generally, 'a defect of parties' refers to joinder problems involving necessary or indispensable parties. It too must be raised by verified objection." (citation omitted)).

We overrule CCS and Sheridan's third issue. Thus, we affirm the trial court's order granting summary judgment on the breach of contract claims as to CCS. However, Sheridan separately raises an issue concerning his individual liability for the breach of contract claims that we will address next.

### 3.    Sheridan's Liability for Breach of Contract

Sheridan argues separately that he cannot be held individually liable for breach of contract because he was acting in his corporate capacity when he signed the Corporate Partnership Agreement. Specifically, Sheridan argues that Williams, Richardson, and ScoutsView did not adequately demonstrate that he was CCS's alter ego, and thus, they could not pierce the corporate veil and hold him individually liable for breach of contract.

In their motion for summary judgment, Williams, Richardson, and ScoutsView acknowledged that Sheridan signed the Corporate Partnership Agreement "on behalf of . . . CCS." There is no evidence in the record that indicates Sheridan signed in his individual capacity, and the motion for summary judgment did not allege that Sheridan breached any contract other than the Corporate Partnership Agreement. The business

13

organizations code describes the means by which a shareholder or a shareholder's affiliate of a for-profit corporation can be held individually liable for contractual obligations or matters relating to or arising from contractual obligations:

(a)     A holder of shares, an owner of any beneficial interest in shares, or a subscriber for shares whose subscription has been accepted, or any affiliate of such a holder, owner or subscriber of the corporation, may not be held liable to the corporation or its obligees with respect to:

. . . .

(2)     any contractual obligation of the corporation or any matter relating to or arising from the obligation on the basis that the holder, beneficial owner, subscriber, or affiliate is or was the alter ego of the corporation or on the basis of actual or constructive fraud, a sham to perpetrate a fraud or other similar theory . . . .

. . . .

(b)     Subsection (a)(2) does not prevent or limit the liability of a holder, beneficial owner, subscriber or affiliate if the obligee demonstrates that the holder, beneficial owner, subscriber, or affiliate caused the corporation to be used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the holder, beneficial owner, subscriber, or affiliate.

TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2), (b); *see id.* § 21.224 ("Section 21.223 is exclusive and preempts any other liability imposed for that obligation under common law or otherwise."); *TecLogistics, Inc. v. Dresser-Rand Grp., Inc.*, 527 S.W.3d 589, 596 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The Third Court of Appeals has extended the application of this section to corporate officers. *See Henderson v. Buttross*, No. 03-17-00285-CV, 2018 WL 3320984, at *4 (Tex. App.—Austin July 5, 2018, no pet.) (mem. op.).

"It is important to note at the outset that disregard of the 'legal fiction of corporate entity' is 'an exception to the general rule which forbids disregarding corporate

14

existence.'" *Lucas v. Tex. Indus., Inc.*, 696 S.W.2d 372, 374 (Tex. 1984). "Under Texas law, a corporation is presumed to be a separate entity from its officers and shareholders." *Richard Nugent and CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 266 (Tex. App.—Houston [14th Dist.] 2018, no pet.). "Generally, alter ego will not apply to disregard the corporate form absent exceptional circumstances." *Id.* "Alter ego applies 'when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.'" *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W.3d 200, 213 (Tex. App.—Houston [1st Dist.] 2018, no pet.). As proof of alter ego, a court may consider:

(1)     the payment of alleged corporate debts with personal checks or other commingling of funds;

(2)     representations that the individual will financially back the corporation;

(3)     the diversion of company profits to the individual for his personal use;

(4)     inadequate capitalization; and

(5)     other failure to keep corporate and personal assets separate.

*Penhollow Custom Homes, LLC v. Kim*, 320 S.W.3d 366, 372 (Tex. App.—El Paso 2010, no pet.). Williams, Richardson, and ScoutsView provided no evidence concerning any of these factors and thus, they did not meet their burden to show that Sheridan was using CCS as his alter ego when any breach of contract occurred. *See* TEX. BUS. ORGS. CODE ANN. § 21.223(a)(2).

Williams, Richardson, and ScoutsView urge that, even if the summary judgment standard to prove alter ego was not met, the summary judgment standard to hold Sheridan individually liable for breach of contract was met by the evidence of Sheridan's

15

fraudulent actions.[6] While it is true that the statute at issue here applies when the plaintiff seeks to hold a defendant individually liable for contractual obligations of a corporation if the theory of individual liability relates to either alter ego *or* to "actual or constructive fraud, a sham to perpetrate a fraud or other similar theory," proving deceptive means is just one of the elements necessary to impose individual liability on Sheridan for the contractual obligations of CCS. *See id.* § 21.223(a)(2), (b).

In their motion for summary judgment, Williams, Richardson, and ScoutsView did not claim that Sheridan's actions were "primarily for [his] direct personal benefit." *See id.* § 21.223(b). It is not clear from the summary judgment evidence who primarily pocketed the funds that Sheridan and CCS received from the sale of the Property. And no other evidence was produced to demonstrate that Sheridan may have directly benefited from the results of his complained-of conduct. Therefore, we conclude that Williams, Richardson, and ScoutsView did not establish, as a matter of law, that Sheridan could be held individually liable for breach of contract. *See id.*; *see also Henderson*, 2018 WL 3320984, at *4.

We sustain this issue and reverse and remand the summary judgment on Williams's, Richardson's, and ScoutsView's breach of contract claims against Sheridan.

## IV. CONCLUSION

We affirm the summary judgment on Williams's, Richardson's, and ScoutsView's

---

[6] To the extent that Williams, Richardson, and ScoutsView are arguing that there are other modalities available to pierce the corporate veil beyond § 21.223 of the business and commerce code, we note that they did not assert any of these additional grounds in their motion for summary judgment. Thus, if the trial court did grant summary judgment on grounds not asserted in the motion, we would still be obligated to reverse and remand. *See McConnell*, 858 S.W.2d at 339.

16

breach of contract claim against CCS. We reverse and remand summary judgment on the remaining claims against Sheridan and CCS for further proceedings consistent with this opinion.

GINA M. BENAVIDES
Justice

Delivered and filed on the
23rd day of March, 2023.